Billy Don THOMSON and Linda Sue Thomson, Individually and as Representatives of the Estate of Amanda Rae Thomson,

v.

James Odell ROOK and Landstar Ranger, Inc.

Civil No. 1:00–CV–332.

United States District Court,
E.D. Texas,
Beaumont Division.

Sept. 19, 2001.

J. Kevin Dutton of The Tonahill Law Firm, Jasper, TX, for Plaintiffs.

Marvin B. Peterson and Mary Ann Starks of Law Offices of Marvin B. Peterson, Houston, TX, for Defendants.

### *MEMORANDUM ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION IN LIMINE TO EXCLUDE EXPERT TESTIMONY OF THOMAS GRUBBS*

HINES, United States Magistrate Judge.

Defendants' motion in limine seeks to exclude testimony of Thomas Grubbs, a forensic witness retained by plaintiffs to testify at trial. A hearing was convened on September 17, 2001, at which Thomas

Grubbs testified. In addition, both sides presented documentary evidence, and respective counsel presented oral arguments.

## BACKGROUND

This lawsuit arises out of a fatal collision on July 16, 1998, near Kirbyville, Texas, between an eighteen-wheel tractor-trailer proceeding northbound on U.S. Highway 96 and a Dodge Ram that pulled out from a convenience store/gas station into lanes of traffic, apparently attempting to cross and proceed southbound. As a result of the collision, the driver of the Dodge Ram, seventeen-year-old Amanda Rae Thomson, was killed. Other minors occupying the vehicle survived.

Suit is brought by Amanda's parents, Billy Don Thomson and Linda Sue Thomson, individually and as representative of the estate of Amanda Rae Thomson. They allege negligence-based causes of action against the driver of the eighteen-wheel tractor-trailer, James Odell Rook ("Rook"), and Landstar Ranger, Inc., an entity claimed to be liable under the doctrine of *respondeat superior.*

## THE WITNESS

Thomas Grubbs ("Grubbs") is a registered Professional Engineer in the State of Texas. Grubbs has both a Bachelor of Science and a Master of Science degree in Mechanical Engineering. Grubbs has spent the last twenty-seven years as a "forensic engineer." Since 1973, Grubbs has been involved in three thousand lawsuits and testified in court over two hundred sixty times. Since 1994, he has given deposition testimony in over one hundred thirty suits. Grubbs allocates sixty percent of his practice to automobile accident reconstruction.

Grubbs has never been disqualified as an expert witness by any court. Grubbs acknowledges, however, that he has never taken any courses, received any certification, taught or published in the specific field of heavy truck/automobile accident reconstruction.

## THE CHALLENGED OPINIONS

Based upon review of photographs taken contemporaneously with the accident, review of police and witness reports, and a personal examination of the accident site much later in March 2001, Grubbs has calculated and given opinions regarding (a) speed of the eighteen-wheel tractor-trailer immediately before the accident (59 m.p.h.), (b) speed of and distance traveled by the Dodge Ram as it crossed Highway 96 in front of the eighteen-wheel rig, and (c) the point of impact between the two vehicles (the center lane of a 5 lane highway). From these calculations, Grubbs deduces that the accident would not have occurred had Rook been traveling at or below the posted speed limit of fifty miles per hour, or had not "maneuvered to the left" into the center lane. Finally, Grubbs opined that Rook reacted tardily in applying his brakes, and that Rook "bears the majority of the blame" for the collision.

Defendants challenge these opinions on the following grounds:

1) Grubbs's opinions relating to facts in issue regarding vehicle speed, skidmarks, travel times of vehicles, point of impact of the collision, reaction time of Rook, or whether the accident would or would not have taken place cannot pass *Daubert* muster because they neither provide nor refer to any specific calculations, peer reviewed studies, generally accepted scientific, mathematical or other reliable foundation or methodology to support them; and

2) Grubbs's ultimate issue opinion regarding whether Rook "bears the majority of the blame" cannot pass *Daubert* muster because it does not

provide nor refer to any specific calculations, peer reviewed studies, generally accepted scientific, mathematical or other reliable foundation or methodology to support it.

Additionally, defendants object on the grounds that with regard to all opinions, Grubbs did not account for variables of the situation, such as dirt or loose gravel on the roadway, loading of the eighteen-wheel tractor-trailer, and vantage point of the photographer. Thus, Grubbs's opinions are nothing more than Grubbs's *ipse dixit,* and—under governing precedent—the court is therefore enjoined from allowing such into evidence.

## DISCUSSION

The Supreme Court's holdings and teachings in *Daubert*[1], *Joiner*[2], and *Kumho Tire*[3] govern the court's analysis. Additionally, *Moore v. Ashland Chemical, Inc.,* 151 F.3d 269 (5th Cir.1998), *Wilson v. Woods,* 163 F.3d 935 (5th Cir.1999) and *Copley v. Smith & Nephew, Inc.,* No. Civ. A.H–97–2910, 2000 WL 223404 (S.D.Tex. Feb.2, 2000), cases cited by defense counsel during the motion hearing, have been reviewed. These cases teach that various factors listed in *Daubert* are relevant when examining admissibility of opinion testimony proffered under Rule 702 of the Federal Rules of Evidence. However, *Kumho Tire* instructs that every case is unique, and the existence or absence of a particular factor listed in *Daubert* does not necessarily indicate reliability or lack thereof.

Specifically, particular cases may require only particular factors.[4]

■ Ultimately, this court's role of gatekeeper is to decide *in limine* (a) whether opinion testimony tendered as scientific, technical or other specialized knowledge is based on an appropriate methodology, and (b) whether the methodology is reliably applied. With regard to the first factor, the primary inquiry is whether the methodology used is generally accepted, can be tested or subjected to peer review by the relevant community of experts. In making these determinations, however, the court walks a fine line. Its focus must be limited to principles and methodology, and not conclusions generated by the witness tendered as an expert. The court must not invade or supplant the adversarial system and right to jury trial.

■ Applying precepts of *Daubert* and its progeny to the instant case, the undersigned concludes there are articles, books, and other experts in the automobile accident reconstruction field that validate the methodology used by Grubbs for calculating speed and distance traveled by the vehicles involved, and the point of impact of the collision.[5] These opinions, moreover, will assist the trier of fact to understand or determine a fact in issue. They also provide a basis for Grubbs to reliably opine that the accident would not have occurred had the eighteen-wheel tractor-trailer been traveling at fifty miles per hour or less, or had the eighteen-wheel

---

1. 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).

2. 522 U.S. 136, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997).

3. 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999).

4. 526 U.S. at 150–51, 119 S.Ct. 1167.

5. Grubbs calculates the speed of the eighteen-wheel tractor-trailer using a standard physics equation employed by automobile accident reconstruction experts and a coefficient of friction derived from J. Stannard Baker's book, *Traffic Investigation Manual,* and specifically adjusted for truck tires and new asphalt.

Grubbs calculates the speed and distance traveled by the Dodge Ram using a standard rate of acceleration from a standing start as reported by the Baker book.

tractor-trailer stayed in its lane and not "maneuvered to the left."

Grubbs's written report does not mention or discuss comprehensively all variables that may have been at the scene of the collision (dirt, gravel, etc.). However, his testimony at the motion hearing indicates he is and was aware of variables, and has at least a colorable explanation for assumptions made within a range for applicable variables. Defendants' cross-examination of Grubbs at the motion hearing revealed there are areas of Grubbs's application of methodology that present real and potential problems regarding Grubbs's ultimate credibility with the trier of fact. However, these deficiencies go to the weight of the testimony, not the admissibility.[6]

■ With regard to Grubbs's remaining opinion testimony, plaintiffs provide no evidence of articles or books, or other experts in the automobile accident reconstruction field that validate the methodology used by Grubbs to calculate Rook's alleged tardy reaction time in braking, whether the accident would not have taken place if Rook had reacted in a timely manner, or that Rook "bears the majority of the blame" for the collision. Therefore those opinions must be excluded. They are neither scientifically supported nor helpful because they merely tell the jury what result to reach, propositions specifically forbidden and excludable under Federal Rules of Evidence Rule 403. *See also* Fed.R.Evid. 704 advisory committee's note.

---

**6.** In a post-hearing submission, defendants tendered an affidavit of Dennis Bledsoe, who states that Grubbs, when calculating speed of the eighteen-wheel tractor-trailer, neglected to include in the equation the "Nievens" factor, a factor that attempts to take into account brake efficiency of tractor-trailers. The thrust of this affidavit is that Grubbs, while using a recognized methodology, failed to apply it reliably.

## ORDER

For the foregoing reasons, it is **ORDERED** *in limine*

1. Defendants' motion to exclude testimony of Thomas Grubbs is GRANTED regarding Grubbs's opinions that (a) Rook's was tardy in braking, (b) the accident would not have taken place if Rook had reacted in a timely manner, and (c) Rook "bears the majority of the blame" for the collision.

2. Defendants' motion is DENIED with regard to Grubbs's opinions as to (a) speed and distance traveled by the vehicles involved, (b) point of impact of the collision and (c) opinions that had the eighteen-wheel tractor-trailer been traveling at fifty miles per hour or less, or stayed in its lane the accident would not have occurred.

3. No reference shall be made by plaintiffs' counsel or any witness to matters excluded in paragraph (1).

4. Any exhibit reflecting items excluded in paragraph (1) shall be redacted so as to eliminate any reference to the excluded items. Plaintiffs may prepare "clean," redacted copies of exhibits reflecting only the opinions the court has allowed so that it does not appear to the jury there are other opinions that have been obliterated.

Bledsoe, although present at the hearing, did not testify, and was therefore not tendered for cross examination. Neither were exhibits to Bledsoe's affidavit offered into evidence in order that plaintiff might object. On Due Process grounds, therefore, Bledsoe's affidavit and attached materials are not considered.